SHARP et al. v. SHARP et al.

No. 3281.   Decided April 2, 1919.   (180 Pac. 580.)

1. PARTNERSHIP—DEATH OF PARTNER—ACCOUNTING. In action by executors of deceased partner for partition of partnership's land, where only claims against partnership are claims by executors of the surviving partners for payment by surviving partners of partnership indebtedness, the executors of surviving partners *held* entitled to accounting. (Page 269.)

2. PARTNERSHIP—DEATH OF PARTNER—DUTY OF SURVIVING PARTNERS —SETTLEMENT OF ESTATE. Under Comp. Laws 1917, section 7724, ordinarily, when a partnership is dissolved by death of one of its members, the settlement of its business affairs belongs to the surviving partners, and it becomes their duty to make settlement without delay, and account to the legal representatives of the deceased partner. (Page 269.)

3. EXECUTORS AND ADMINISTRATORS—DEATH OF PARTNER—CONTINGENT CLAIMS OF SURVIVING PARTNERS—ACCOUNTING. In view of Comp. Laws 1917, section 7671, 7724, contingent claims by sur-

Appeal from Third District.

viving partners against estate of deceased partner cannot be settled without an accounting. (Page 271.)

4. EXECUTORS AND ADMINISTRATORS—DISTRIBUTION OF ESTATE—"CONTINGENT CLAIM"—PAYMENT INTO COURT. A "contingent claim," within Comp. Laws 1917, section 7671, providing that contingent claim against an estate must be paid into court and there remain to be paid over to the party when he becomes entitled thereto, or to be distributed, as the circumstances of the case require, does not include a claim of the surviving partner against the estate of a deceased partner. (Page 271.)

5. PARTNERSHIP—DEATH OF PARTNER—SETTLEMENT OF PARTNERSHIP AFFAIRS. In the settlement of debts due surviving partners for payments of partnership indebtedness after dissolution of partnership by the death of a partner, the partnership may be treated as an entity distinct from its members. (Page 271.)

6. PARTNERSHIP—RELATION TO PARTNERS—FIDUCIARY RELATIONSHIP. The relation of partners, as between themselves, is a fiduciary relationship of trustee and cestui que trust, and this fiduciary relationship exists between the surviving partner and the legal representatives of a deceased partner. (Page 271.)

7. EXECUTORS AND ADMINISTRATORS—DUTIES—PARTNERSHIP. If the surviving partner dies before the partnership business is settled, the duty of closing up the partnership business and account under Comp. Laws (1917, section 7724, devolves on his legal representative. (Page 272.)

8. EXECUTORS AND ADMINISTRATORS—PARTNERSHIP—CLAIMS OF SURVIVING PARTNER—LACHES. Where surviving partners paid partnership debts without filing claim against estate of deceased partner, and retained partnership property expecting to sell when they would receive a price adequate to pay partnership debts, such delay did not estop the executors of the surviving partners from interposing claim for partnership debts paid upon action for partition of partnership property, by executor of first deceased partner, where delay did not prejudice the estate of the deceased partner, notwithstanding Comp. Laws 1917, sections 7645, 7648, 7655, and 7671.[1] (Page 275.)

Appeal from District Court, Third District, Salt Lake County; *Harold M. Stephens,* Judge.

Action by William G. Sharp and others, as executors of the will of John Sharp, Sr., deceased, against John N. Sharp and others, executors of the will of John Sharp, Jr., deceased, and

[1] *Hamilton* v. *Dooly,* 15 Utah, 299, 49 Pac. 769.

others, in which defendants filed a counterclaim. Judgment for plaintiffs, and dismissal of defendants' counterclaim and defendants appeal.

REVERSED, with directions.

*Young & Moyle,* of Salt Lake City, for appellants.

*Williams & Williams,* of Salt Lake City, for respondents.

CORFMAN, C. J.

This was an action brought by the plaintiffs in the district court of Salt Lake county for the partition of certain real property, mineral land, situated near the town of Bingham, in said county. All of the parties originally interested in the property are deceased, and the parties to the action are the executors of their respective estates.

The complaint, in substance, alleges: That John Sharp, Jr., died seized of lot No. 205, the Golden Era mining claim, containing an area of 3.93 acres; that during their lifetime John Sharp, Sr., and his two sons, John Sharp, Jr., and James Sharp, on September 24, 1889, entered into a written agreement and declaration as follows:

"First. That we are partners and joint owners in all the property we hold in our joint or several names, or otherwise, excepting our homesteads, which are hereinafter described. Said properties so held jointly consist of lands and appurtenances, money, stocks, bonds, and other personal property, whether in this territory or elsewhere; and such ownership of said joint property is in the proportion following, to wit: The said John Sharp of all said partnership or joint property is owner of an undivided one-half thereof, and said John Sharp, Jr., and the said James Sharp are the owners of the other undivided one-half of said joint property; and each of them, the said John Sharp, Jr., and James Sharp hold and own the following proportions, viz. John Sharp, Jr., ⅜ of said undivided one-half, and James Sharp ⅝ of said undivided one-half. And we and each of us agree to hold the same as partners and joint tenants during our lives and *until the decease of one or more, when the partnership property is to be appraised and divided in the proportions aforesaid.* And in case of the death of

either of us the children of the one deceased shall inherit his share. Our homesteads now occupied by us, respectively, or our families, and which are not joint or partnership property, are owned and described as follows, to wit:  [Describing.]  *  *  *" (Italics ours.)

"And it is further mutually agreed between us that during the continuance of this partnership that our respective families and ourselves will live from the proceeds and income of our joint property and joint earnings, and no account will ever be taken thereof; and upon the dissolution of the copartnership the joint property will be divided as aforesaid with regard to the amount used by either of us."

The prayer is for partition by sale of the Golden Era mining claim, and that the proceeds thereof be distributed according to the respective interests of the parties.

The amended answer of the defendant executors for the estate of John Sharp, Jr., deceased, admits all the allegations of the complaint, except it is denied that the estate of John Sharp, Sr., has any interest in the Golden Era mining claim, other than as interested in the partnership; it is also affirmatively alleged that the copartnership affairs have not been settled nor the debts and obligations thereof paid. It is further alleged, by paragraphs numbered VII, VIII, and IX of the answer, that the estate of John Sharp, Sr., deceased, has not accounted to the estate of John Sharp, Jr., deceased, for large sums of money paid out by the latter estate on account of said partnership debts and obligations, as fully set forth by counterclaim, which said sums are in excess of the amount likely to be received from the sale of the said mining claims; further, that at the time of the death of John Sharp, Sr., there was standing in his name real property consisting of an undivided one-half interest in 2,400 acres of coal lands located in Emery county, and that the estate of John Sharp, Sr., has not accounted for the proceeds derived therefrom, consisting of 19,312 shares of the capital stock of the San Rafael Coal Company, a corporation, and that no part of the proceeds from the sale of said mining claim should be paid to plaintiffs until plaintiffs account to defendants for said coal lands or the proceeds derived therefrom, and until settlement and accounting is had of all matters set forth in defendants' counterclaim.

The defendants' counterclaim, which is by way of answer as well, after alleging the same affirmative matters set forth in the complaint with respect to the representative capacity of the parties to the action and for the sale of the Golden Era mining claim, and also the affirmative matters set forth in the answer, alleges that the partnership relations of John Sharp, Sr., John Sharp, Jr., and James Sharp were entered into in 1869, and that the written declaration and agreement set forth in the complaint was made in 1889 in order that they might have their said relationship and their respective interests declared by memorandum in writing. In addition thereto it is alleged that the partnership relations continued until the death of John Sharp, Sr.; that prior to the death of John Sharp, Sr., the copartners had incurred certain indebtedness, and had signed, in behalf of said copartnership, certain obligations which were unpaid at the time of death of said John Sharp, Sr., and suit had been brought in the district court for Salt Lake county for the collection of said indebtedness; that a judgment was rendered in said action on or about November 4, 1896, against the defendants, including the copartnership, for the sum of $25,318.72, with interest and costs; that afterwards, in April, 1898, James Sharp and John Sharp, Jr., being the surviving partners of the partnership, for the benefit of the copartnership and to relieve it from the said judgment without any further consideration, indorsed certain notes aggregating $23,000, and conveyed certain real property owned by them individually as security for the payment thereof, all for the benefit of the copartnership, and thereupon said judgment was canceled; that afterwards suit was brought in the district court for Salt Lake county by the Deseret Savings Bank against James Sharp and John Sharp, Jr., and others for the collection of said notes, and a judgment was duly rendered in December, 1904, against John Sharp, Jr., and the executors of the estate of James Sharp, in their representative capacity, for the sum of $24,690.42, with interest and costs, and the security given by said John Sharp, Jr., and James Sharp, as aforesaid, was sold by order of court for $12,726.10, and said sum was credited on said judgment;

that on February 18, 1905, a deficiency judgment was rendered against John Sharp, Jr., for the sum of $4,000.88, which was afterwards paid by John Sharp, Jr.; that the total amount procured from the sale of securities of said John Sharp, Jr., and paid by him for the benefit of said copartnership, aggregates $8,437.31. It is further alleged that no settlement has been made or accounting had of any of said items, and nothing has been paid thereon; that after an accounting and settlement is had by said copartnership there will be no assets above the liabilities of said copartnership, and that the copartnership assets will be insufficient to compensate the estates of the respective defendants for the amounts paid out as aforesaid. It is further alleged in the counterclaim that a large part and nearly all of the property of the estate of John Sharp, Sr., has already been distributed to devisees, and in case proceeds from sale of the Golden Era mining claim are paid to plaintiffs they will pass beyond the control of the court; that it is necessary, in order to avoid a multiplicity of suits, that any proceeds derived from the sale of any assets belonging to the partnership should be applied to the payment of any indebtedness owing or obligations incurred by said partnership, including the reimbursement of any members of the partnership for any amounts paid out by them for the benefit of said partnership, before any distribution of the assets should be made in case it be determined there are assets above liabilities. It is also alleged in the counterclaim that notice to creditors was duly published in the estate of John Sharp, Jr., to present claims, and that time therefor elapsed in 1916, and that plaintiffs at no time prior to bringing suit presented any claim. Defendants pray ''for an order for the sale of said Golden Era mining claim, and that the proceeds therefrom be applied to the payment of the obligations of the copartnership; that a final settlement accounting be had of said partnership affairs, and, in case it shall be deemed necessary, that all partnership assets be disposed of, and the proceeds derived therefrom applied to the payment of its obligations, and in case there is a surplus that it be distributed in accordance with the rights of the parties to said

partnership; that the amount due defendants and the other parties to this suit, if any, be determined and paid.'' Defendants also pray for general relief.

The defendants, executors of the estate of James Sharp, deceased, made answer and counterclaim of like purport and effect, and the procedure, orders and judgment of the district court with respect thereto are practically the same. Therefore the answers of the defendants, respectively, will be hereinafter referred to and regarded as one.

Upon the application of the plaintiffs all the matters contained in paragraphs VII, VIII, and IX of the amended answer were stricken out by the trial court as irrelevant and redundant. A demurrer interposed by plaintiffs to the counterclaim, on the ground that it did not state facts sufficient to constitute a cause of action, was sustained with leave to amend. Thereafter, the defendants having failed to amend their answer, upon the application of the plaintiffs the court made and entered its findings of fact, conclusions of law, and rendered judgment on the pleadings in accordance with the prayer of the plaintiffs' complaint, and made an order dismissing the defendants' counterclaim.

It is of these orders and judgment that defendants complain on appeal.

In our statement of the case we have endeavored to set forth only so much of the pleadings of the respective parties as may be necessary for a proper consideration of the questions involved. The respective rights of the parties under the pleadings are rendered somewhat complex and difficult to determine by reason of the fact that there is no allegation in the complaint or answer, including the counterclaim, as to when any of the parties to the controversy died, or as to when their respective wills were admitted to probate, or their legal representatives empowered to act. Further, the complaint is silent as to when, if ever, due notice to the creditors of John Sharp, Sr., was given. As to the defendants, it is alleged by way of answer that in the matter of the estate of John Sharp, Jr., deceased, notice was given to creditors to present their claims as late as ''on or before ———— day

of ——————— 1916,'' and that no claims were presented. The pleadings of the respective parties are also silent as to whether or not an accounting of the partnership affairs was ever demanded on the part of any interested party.

It appears from the pleadings that the entire assets of the copartnership consists of property against which there are no liens, and that there are no unsatisfied partnership obligations or claims of any nature, except the claims of the defendants for debts and obligations paid and discharged by surviving partners for the benefit of the partnership property subsequent to the death of John Sharp, Sr., and the consequent dissolution of the copartnership, and that all of the interested parties are before the court in a representative capacity.

Therefore we can see no legal objection to a sale being made, an accounting had and the proceeds of sale distributed equitably to the estates of the deceased partners in accordance with their respective rights, under, the orders of the district court in this action. It appears that the plaintiffs asked for and the court ordered a sale and distribution of only a part of the partnership property among the several estates without any accounting. The defendants called for a sale of all the partnership property, an accounting, and a distribution of the proceeds between the respective estates of the deceased partners.

Under the provisions of the Probate Code (Comp. Laws 1917, section 7724 [3918]), ordinarily, when a partnership is dissolved by death of one of its members, the settlement of its business affairs belongs to the surviving partners; and it becomes their duty to make settlement without delay, and account to the legal representatives of the deceased partner. In the case at bar the surviving partners, for some reason unexplained, failed to exercise the right accorded them by the statute, and it does not appear that any interested party called upon them to do so before the commencement of this action. In view of the relationship of the parties and the character of the partnership property, we think it can safely be assumed that the parties interested preferred to defer a settlement of the partnership business until

such a time as the mining property and interests might be disposed of advantageously and for their mutual benefit. Under the facts and circumstances, as shown by the pleadings of the respective parties, we think the district court had jurisdiction of the parties and the subject-matter, and, upon a proper showing being made, the court had the right to order a partition by sale of the partnership property, and accounting if needs be, and the proceeds of sale distributed to the estates of the deceased partners, equitably and in accordance with their respective rights under the partnership agreement.

As has been pointed out, the defendants, by their answer and counterclaim, sought for a sale of all the partnership property and an accounting predicated on the allegations of their answer and counterclaim that prior to the death of John Sharp, Sr., the partnership had incurred certain indebtedness remaining unpaid at the time of his death, and that subsequently this indebtedness had been paid and discharged by the surviving partners for the benefit of the partnership interests. The relief thus sought for was denied the defendants on the grounds (1) that the claim of the defendants was stale and inequitable, and (2) that it was not presented in time for allowance against the estate of John Sharp, Sr., pursuant to Comp. Laws 1917, section 7648 (3851), 7655 (3858), and 7671 (3874).

For our convenience we will discuss the contention made by the plaintiffs and the rulings of the trial court in the reverse order.

(A)   Was it necessary for the surviving partners to present their claims in the matter of the estate of John Sharp, Sr., the deceased partner?

The statutory provisions of our Probate Code, with reference to presentation of claims against estates of deceased persons, including the above references, provide as follows:

"Sec. 7645 (3848). Every executor or administrator must, immediately after his appointment, cause to be published a notice to the creditors of the decedent.  *   *   *"

"Sec. 7648 (3851). All claims arising upon contracts, whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not presented is barred forever.  *   *   *"

"Sec. 7655 (3858).  No holder of any claim aaginst an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator, except.  *  *  * "

"Sec. 7671 (3874).  If there is any claim  *  *  *  contingent  *  *  *  the amount thereof or such part of the same as the holder would be entitled to if the claim were  *  *  *  established, or absolute, must be paid into the court and there remain to be paid over to the party when he becomes entitled thereto, or if he fails to establish his claim, to be paid over or distributed as the circumstances of the case require."

As heretofore pointed out, the proceedings in this case are silent as to when John Sharp, Sr., died.  There is absolutely no allegation as to the dates when his will was admitted to probate, when the executors were appointed, when they qualified, or when, if ever, any notice was given to creditors to present their claims.  A careful reading of section 7671 (3874) in connection with section 7724 (3918), heretofore referred to, convinces us not only of the utter impracticability of presenting the contingent claims of surviving members of an unsettled partnership business against the estate of a, deceased partner without an accounting, but that the term ''contingent claim,'' as employed and used in section 7671 (3874), was not intended to have any application in case of dissolution of a partnership by death of one of its members in the winding up and settlement of its affairs. Moreover, the defendants in this action are seeking nothing more than a settlement of partnership affairs as distinguished from a demand for judgment against the personal estate of a deceased partner.  The relief asked for is against the partnership, and is nothing more than that partnership property shall be subjected to the payment of partnership debts and obligations.  To that extent, at least, we think the partnership may be regarded and treated as an entity distinct from its members.  Therefore the rights of the partners inter se should be worked out through the partnership relation.

The relation of partners as between themselves is a fiduciary one, that of trustee and cestui que trust, and this fiduciary relationship exists between the surviving partner and the legal representative of the deceased partner.  Our statute makes it the duty of the surviving part-

ner to close up the partnership business and account to the representative of the deceased partner.

If the surviving partner dies before the partnership business is settled, the duty devolves upon his legal representative. *Galbraith* v. *Tracy*, 153 Ill. 54, 38 N. E. 937, 28 L. R. A. 129, 46 Am. St. Rep. 867. Partnership real estate, for the purposes of settlement of the partnership business, is regarded in equity as personalty. Lindley on Partnership (2d Ed.) pp. 764, 765, and notes. After partnership debts and liabilities are paid and discharged, then, and not until then, the remainder goes to the heirs and devisees. 20 R. C. L. 76. In the case at bar all the parties, by their pleadings, have expressly relied upon a partnership contract expressly declaring the realty sought to be partitioned partnership property. From the standpoint of justice and equity we can see no clear way for either party to claim a specific interest therein until an accounting is had and the just debts and liabilities of the partnership are paid and discharged. While the procedure with respect to partitioning of real property in our jurisdiction is special and defined by statute, the district court, in which the action is brought, is clothed with general equity powers, and the nature of the case is such that the court cannot in partitioning do complete justice between the parties before it in any other way than by ordering an accounting of partnership affairs.

(B)   Is the claim set forth in the counterclaim barred by laches?

Although laches is not expressly pleaded in the case at bar, the plaintiffs contend that it appears upon the face of the answer and counterclaim of the defendants, and therefore the question is raised by their demurrer; citing *Bell* v. *Hudson*, 73 Cal. 285, 14 Pac: 791; 2 Am. St. Rep. 791; *Lansdale* v. *Smith*, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219. Let it be conceded that the question of laches may be raised on demurrer, we think the cases cited may be very readily distinguished from the case at bar.

In the Bell Case, relied on by plaintiffs, the facts were: The partners had carried on a partnership business from

1849 until the death of one of the partners, John A. Bell, in 1859, at which time there belonged to the firm ''a large amount of personal property, consisting of stock, beef, cattle, horses and mares, * * * real estate * * * in the names of the partners, * * * notes and other demands, * * * besides other property to the plaintiff unknown.'' No administration was had upon the estate of John A. Bell until June 3, 1885, during which time the surviving partner continued in possession of all the aforesaid property, disposing of it as his own and as he saw fit. The surviving partner died in 1885, and suit was brought for an accounting against the executors of the estate of William M. Bell, the surviving partner. The trial court held that the fact that they delayed until the death of the surviving partner, a period of 25 years, their action was stale.

The Lansdale Case did not involve the settlement of a partnership business, but is illustrative that demurrer will lie to a complaint seeking relief 45 years after the cause of action arose involving title to and claiming an interest in, real property.

In the cases cited by plaintiffs, and, as we think, practically all of the cases where the doctrine of laches has been applied by the courts, it appeared on the face of the complaint that by reason of lapse of time prejudicial changes had taken place in the conditions or relations of the property to the parties, or the parties had been prejudiced by loss of testimony or inability to make proof of the changed conditions of the property or its relation to the parties.

In the case at bar we can readily appreciate that all parties concerned in the mining property and interests involved may well have considered that it was to their mutual advantage to keep and hold the partnership property until it would command a price adequate to pay and discharge the partnership debts and liabilities, and if in the meantime the surviving partners paid and discharged the debts and liabilities out of their personal means in order to benefit the partnership business and preserve its property, then, we think, before the plaintiffs should be permitted to share in the benefits thus de-

rived, they should be held to give recognition to the demands of the defendants for an accounting.

From the face of the pleadings in this action there has been practically no change in the condition of the property; the relations of both the plaintiffs and the defendants to it are precisely the same. The claims of the defendants, as set forth in their answer and counterclaim, are founded on alleged facts plainly susceptible of satisfactory proof. The plaintiffs are not prejudiced by the lapse of time. On the other hand, if the facts alleged are true—and for the purpose of passing on the sufficiency of the counterclaim of the defendants they must be so taken—then the plaintiffs have been benefited by the lapse of time, and it would be manifestly inequitable and unjust to permit them to share in the partnership property involved in this action without sharing in the burdens assumed by the defendants in clearing it from debts and liabilities to which it might have been subjected by creditors of the partnership. Quoting from plaintiffs' brief, citing *Wilson* v. *Wilson et al.,* 41 Or. 459, 69 Pac. 923:

"If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantage they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive. * * * If, however, upon the other hand, it clearly appears that lapse of time has not in fact changed the conditions and relative positions of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is governed chiefly by its own circumstances."

To the same effect are *Clay* v. *Freeman,* 118 U. S. 97, 6 Sup. Ct. 964, 30 L. Ed. 104; *Stevens* v. *Grand Central Min. Co.,* 133 Fed. 28, 67 C. C. A. 284; *Ryason* v. *Dunten,* 164 Ind. 85, 73 N. E. 74; *Shearer* v. *Hutterische Bruder Gemeinde,* 28 S. D. 509, 134 N. W. 63; *London & San Francisc Bank* v. *Dexter*

*Horton & Co.*, 126 Fed. 593, 61 C. C. A. 515; *Hamilton* v. *Dooly*, 15 Utah, 299, 49 Pac. 769.

As we view this case, upon the face of the pleadings, plaintiffs have suffered no prejudice by lapse of time. The property involved has been held, concededly, as partnership property. The plaintiffs invoke the aid of the court with respect to the partitioning of the Golden Era mining claim on the ground that it has been held in trust by the defendants, under a partnership agreement, for the benefit of an unsettled copartnership. Under all the circumstances, as appears from the face of the defendants' answer and counterclaim, we do not think the relief sought for ought to be denied nor their counterclaim dismissed. We are of the opinion that the trial court committed error in striking out the matters alleged in paragraphs numbered VII, VIII, and IX of defendants' answer; that the plaintiffs' demurrer to the amended counterclaim should have been overruled and the counterclaim permitted to stand.

It follows that the orders of the district court above referred to should be vacated and set aside, and the judgment as rendered on the pleadings reversed and vacated, in so far as it denies the defendants an accounting of partnership affairs and the relief sought for by their counterclaim relating to partnership affairs. With respect to the order of sale of the Golden Era mining claim, the judgment may stand. It is so ordered. Costs to be paid out of the partnership estate.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.