## KIMBALL v. McCORNICK et al.

No. 4539.   Decided August 15, 1927.   (259 P. 313.)

*Young, Boyle & Moyle* and *Wilson & Barnes,* all of Salt Lake City, for appellant.

*Cheney, Jensen, Martineau & Stephens,* of Salt Lake City, for respondents.

HANSEN, J.

The plaintiff brought a suit in equity against the defendants as executors of the last will and testament of W. S. McCornick, deceased, for an accounting by the defendants of an alleged copartnership between the plaintiff and W. S. McCornick, deceased. At the conclusion of plaintiff's evidence the defendant moved for a judgment of nonsuit in favor of the defendants and against the plaintiff, upon two grounds: (1) Insufficiency of the evidence to sustain plaintiff's allegation that the plaintiff and W. S. McCornick, deceased, had been copartners during the lifetime of

W. S. McCornick, as alleged in plaintiff's complaint; and (2) that the evidence affirmatively shows that if there ever was a copartnership existing between plaintiff and W. S. McCornick, deceased, any claim that the plaintiff may have had for an accounting of such copartnership is barred by laches, and particularly barred by the statutes of limitation. Section 6466, subds. 1, 2, and sections 6467, 6474, Comp. Laws Utah 1917. The motion for a judgment of nonsuit was granted, and upon defendants' motion plaintiff's suit was dismissed.

The plaintiff appeals from the judgment of dismissal. Various errors are assigned upon this appeal, among them the dismissal of plaintiff's suit for an accounting.

The plaintiff in his complaint alleges that in April, 1907, an agreement of copartnership was entered into between plaintiff and W. S. McCornick, which copartnership continued until about January 1, 1912, when, by mutual consent, such partnership was dissolved; that by the terms of the copartnership agreement McCornick was to lend to the partnership the use of his banking name and contribute such working capital in the venture as might be needed from time to time; that plaintiff should contribute to such venture his personal management and supervision, and that the earnings of the firm, if any, should, after deducting any unpaid balance of working capital contributed by McCornick, be divided equally between McCornick and plaintiff; that under the copartnership agreement a bank was operated at Eureka, Utah, and another bank was operated and other investments made at Twin Falls, Idaho; that in 1912, when the partnership was dissolved, it was agreed that the plaintiff should take over, and plaintiff did take over, the Eureka bank; that it was then further understood and agreed that the net profits be divided equally between the partners from the Twin Falls transactions, which profits were very largely in excess of the net profits of the Eureka bank; that an accounting and settlement with respect to the Twin Falls

transactions should be deferred until McCornick & Co., Bankers, were no longer liable with respect to any obligations incurred by the Eureka bank; that all of the assets of the Twin Falls transactions have been in the sole and exclusive possession of W. S. McCornick and the defendants herein since about January 1, 1912; that on or about October 1, 1920, all liabilities, contingent or otherwise, of said McCornick & Co., Bankers, with respect to the banking operations at Eureka had ceased, save only with respect to 21 certificates of deposit aggregating $308.11, and 10 open checking accounts aggregating $2,951.17, of which checking accounts $1,678.89 was withdrawn in 1921. Plaintiff further alleges in his complaint that on or about October 1, 1920, he in good faith, believing that all liabilities of McCornick & Co., Bankers, with respect to the Eureka transactions had ceased demanded on accounting and settlement by W. S. McCornick with respect to the partnership operations in and about Twin Falls, but that W. S. McCornick failed and neglected to account or settle with respect thereto; that the banking business and other investments in and about Twin Falls earned profits in excess of $100,-000; that plaintiff during the period of existence of the partnership performed his part of the contract of partnership; that he received no salary or other compensation for or on account of the time and efforts he had spent at Twin Falls in connection with the Twin Falls enterprises. It is also alleged that W. S. McCornick died on or about May 18, 1921; that the defendants are the executors of the last will and testament of deceased; that plaintiff has presented and filed with the executors a duly verified proof of claim against the estate of W. S. McCornick with respect to the copartnership venture at Twin Falls; and that the claim has been rejected. Plaintiff offers to do equity by depositing money in court subject to the court's order or furnishing a bond to hold McCornick & Co., Bankers, harmless from and against all liablity with respect to the Eureka bank.

Defendants in their answer admit that W. S. McCornick died on May 18, 1921, and that they are the duly appointed, qualified, and acting executors of his estate. They also admit that a claim was presented by the plaintiff demanding an accounting of the partnership, and that the claim has been rejected. Defendants deny generally the other allegations of the complaint and plead that if plaintiff ever had any claim against W. S. McCornick on account of any partnership, the same is in equity barred by plaintiff's laches in waiting for several years and until after death of W. S. McCornick before attempting to enforce the same, and particularly is such claim barred by the provisions of sections 6466, subds. 1, 2, sections 6467, 6474, Comp. Laws Utah 1917.

Early in the trial of this cause the following proceedings were had:

"Mr. Jensen (of counsel for defendants): Now, your honor, there were some questions spoken of in chambers, that the hearing of this case be limited, first, to the trial of the partnership issue, and I take it both parties are willing the record shows that they have agreed on that proposition.

"The Court: That is, that it be limited to the issue as to whether or not there was a partnership existing as alleged in the complaint, and then if the court entered an interlocutory decree, or decreed any judgment upon that issue, and then whether or not there is a partnership will determine whether they go ahead and take an accounting.

"Mr. Wilson (of counsel for plaintiff): I take it your honor's language is exactly proper, except in this, that in the event you find from the evidence that there was no partnership, then your decree against the plaintiff would likely be a final decree, and in the event you find there was a partnership existing it would be an interlocutory decree ordering an accounting.

"The Court: Either directing an accounting to be taken, or going ahead and taking an accounting."

Evidence was offered and received on behalf of the plaintiff to the following effect:

Charles A. Glazier testified that he is a resident of Provo, Utah, of the age of 58 years; that he has been state bank examiner of Utah and has known W. S. McCornick for more than 35 years; that he had various conversations with W. S. McCornick about the business relations of W. S. McCornick and plaintiff herein; that in 1916, while talking about a note held by McCornick & Co., Bankers, for the sum of $7,500, signed by plaintiff, W. S. McCornick stated that he held a note signed by the plaintiff for the sum of $50,000 and that he, W. S. McCornick, had been in a partnership with plaintiff in the Eureka bank and the bank at Twin Falls; that the partnership had not been settled, and that he probably owed the plaintiff twice the amount of the $50,000 on account of said partnership; that in 1917, and again in 1921, W. S. McCornick stated that he had not yet settled the partnership matters with the plaintiff herein.

Ernest R. Woolley testified that he is a resident of Salt Lake City, Utah; that he knew W. S. McCornick for a period of 15 or 20 years; that in June, 1920, the witness had a conversation with W. S. McCornick in which McCornick stated that he had been offered $250,000 for the Twin Falls bank, but that the deal for the sale thereof was being held up because he had not had a settlement of the partnership business between himself and the plaintiff; that McCornick did not wish to make settlement of the partnership because he wanted to keep plaintiff at work on the Sevier Land & Water Company; that McCornick stated that plaintiff wanted $40,000 in payment of his interest in the partnership.

James E. Jennings testified that three or four years before the death of W. S. McCornick, he, Jennings, had a talk with McCornick in which he stated that plaintiff was entitled to some consideration for the good investments he had made at Twin Falls.

The plaintiff, Frank D. Kimball, testified that he became acquainted with W. S. McCornick in June, 1873, when W. S.

McCornick purchased an interest in A. W. White & Co., Bankers, at which place the plaintiff was then employed; that he was later employed by W. S. McCornick at Mercur, Utah, then at Eureka, and later at Twin Falls, Idaho; that the Mercur bank ceased operations on August 1, 1902; that during 1901 and 1902 he was operating both the Eureka and Mercur banks as manager; that in 1905 he went to Twin Falls, Idaho, which was then being settled and there opened up a bank for W. S. McCornick; that from June 1, 1905, until October, 1908, he managed the bank at Twin Falls; that while at Twin Falls he made various investments in real estate and also purchased a mercantile business; that in 1908 the Twin Falls bank was incorporated under the name of the Twin Falls Bank & Trust Company; that from 1908 until 1910 he was a director of the Twin Falls Bank & Trust Company; that in 1910 he ceased being an officer of the Twin Falls Bank & Trust Company and voted his stock in favor of H. A. McCornick, a son of W. S. McCornick, for the office of director of said bank, to which office H. A. McCornick was elected; that during the remainder of 1910 and during the year 1911 he went to Twin Falls, Idaho, about every 60 days to look after the business there; that during this period he spent his time at Eureka and Twin Falls. Plaintiff was asked questions as to conversations had with W. S. McCornick, but objections were made by counsel for the defendants that such conversations were equally within the knowledge of the witness and W. S. McCornick and therefore excluded, under the provisions of section 7123, Comp. Laws Utah 1917. The objections were sustained.

Carl J. Hahn testified that he now resides and since 1905 has resided at Twin Falls, Idaho; that since 1905 he has been employed with the McCornick & Company bank, and later with its successor, the Twin Falls Bank & Trust Company of Twin Falls, Idaho; that he left the employ of McCornick & Company at Salt Lake City to work in the

Twin Falls bank at the request of plaintiff and with the consent of W. S. McCornick; that from 1905 until the Twin Falls bank was incorporated in 1908 plaintiff gave directions as to the making of leases, investments, loans, deposits, and directed the business generally at the Twin Falls bank; that after the bank at Twin Falls was incorporated in 1908 plaintiff came to the bank about once a month or oftener and went over the affairs of the bank; that plaintiff did not receive a salary from the Twin Falls bank; that in addition to directing the business of the bank plaintiff also supervised the store and other business at Twin Falls.

Some of the books of account of the Twin Falls bank were received in evidence which showed that the employees of the bank received a salary, and that plaintiff was paid his expenses but received no salary. The minute book of the Twin Falls bank shows that the plaintiff was present at practically all meetings prior to 1912, but that plaintiff did not attend any meeting of the board of directors during 1912 or thereafter. Part of the books of account of the Eureka bank were received in evidence, which showed that beginning with April, 1907, dividends of the bank were paid equally to the plaintiff and W. S. McCornick. A total of $52,500 in dividends was paid to the plaintiff and a like amount paid to W. S. McCornick by the Eureka bank. The last dividend payment made to W. S. McCornick was on December 29, 1911. Plaintiff received dividends after that date, but W. S. McCornick did not. The books of the Eureka bank also show that plaintiff received a salary of $100 per month.

Counsel for defendants contend that the motion for a nonsuit was properly granted because there is no proof that a partnership ever existed between plaintiff and W. S. McCornick, and even if a partnership was shown the proof is so vague and uncertain as to make such partnership unenforceable, in that it is not shown what were the terms of the partnership, nor is it made to appear

when such partnership began or when it was dissolved. We are of the opinion that there is substantial proof in the record of the existence of the partnership. Two witnesses testified that the deceased had told them that the deceased and the plaintiff were partners in the Twin Falls bank, and still another witness testified that deceased had stated that plaintiff was entitled to consideration on account of the good investments made at Twin Falls. In the Eureka bank it appears that the profits during the period relied upon by plaintiff were divided equally between the deceased and the plaintiff. The fact that two persons share the profits of a business raises the presumption that they are partners. 30 Cyc. 369, and cases cited in the footnote; *Vincent* v. *Macbeth,* 211 App. Div. 110, 206 N. Y. S. 870; *Steger* v. *Greer* (Tex. Civ. App.) 228 S. W. 304; *Minter* v. *Gidinsky et al.* (Mo. App.) 228 S. W. 1075; *Parish* v. *Bainum,* 291 Ill. 374, 126 N. E. 129. If the partnership existed with respect to the Eureka bank, the fact that the plaintiff devoted considerable time to the Twin Falls bank and other investments at that place without compensation other than his actual expenses may well be said to indicate that the partnership, if any, included the Twin Falls transactions. As to the terms of the partnership, if any, the law seems to be well settled that, in the absence of any agreement or proof of an agreement to the contrary, the partners will divide the profits and the losses equally. 1 Jones, Comm. Ev. (2d Ed.) p. 353, § 209; 2 Rowley, Modern Law of Partnership, p. 919, § 674; Story on Partnership (7th Ed.) p. 27, § 24. Numerous cases are cited in the footnotes in support of the various texts.

A careful reading of the record discloses the fact that the only evidence which tends to support plaintiff's claim that the partnership agreement took effect in 1907 is the fact that on April 1st of that year the plaintiff and W. S. McCornick each received equal dividend checks from the Eureka bank. There is evidence that as late as

December 29, 1911, a dividend was declared by the Eureka bank in which plaintiff and W. S. McCornick participated equally, and there is also evidence that from and after January 1, 1912, the plaintiff took no part in directing the affairs of the Twin Falls bank and other investments at that place, which evidence tends to support the allegation that no partnership existed between plaintiff and W. S. McCornick after January 1, 1912. It is true that the evidence is not satisfactory as to when the partnership, if any, began nor when it was dissolved; but if it shall be found that a partnership did in fact exist, the plaintiff is entitled to an accounting during the existence of such partnership, even though the exact dates of its inception and dissolution are not made certain. Indeed, it may be that if an accounting is had the exact dates will be immaterial.

We are therefore of the opinion that there is sufficient evidence in this case from which it may be found that the plaintiff and W. S. McCornick were copartners in ■ the bank and other investments at Twin Falls, Idaho; that such partnership began as early as 1907, and continued until on or about January 1, 1912.

It is earnestly contended by counsel for appellant that in the stipulation hereinbefore set out the only question that was before the court at the time the motion for nonsuit was made by the defendants' attorneys was whether or not a partnership existed between plaintiff and W. S. McCornick, deceased. Counsel for respondents, on the other hand, contend that by reason of the scope of the evidence offered and proceedings had after the stipulation was entered into, and also by reason of the fact that if the statutes of limitation barred the suit, there was no occasion for an accounting, therefore the trial court should properly determine all matters necessary to be determined except those involved in the accounting itself. Upon the statement contained in the discussion between counsel and the court as hereinbefore set out, we are of the opinion that appellant's position is

correct; but, if the plea of the statutes of limitation should be found to be a complete defense to any claim that plaintiff may have, it, of course, would be a useless proceeding to take an accounting. Whether or not the statutes of limitation have barred plaintiff's claim, if any, may, however, depend upon the evidence adduced from the accounting. But aside from what may be made to appear from the accounting, we are of the opinion that the evidence before the trial court at the time the motion for nonsuit was made and granted does not affirmatively prove that the plaintiff is barred from the prosecution of his suit.

The burden of proof is upon the defendants to establish that the alleged claim is barred in the absence of such proof by the plaintiff. The plea of the statutes of limitation is an affirmative defense, and a party who rests his defense upon such statutes must prove facts which entitle him to their benefit. 7 Jones, Comm. Ev. (2d Ed.) 1025, § 558; *Thomas* v. *Glendinning*, 13 Utah, 47, 44 P. 652; *Tate* v. *Rose*, 35 Utah, 229, 99 P. 1003; Comp. Laws Utah 1917, § 6602. While there is evidence in this case from which it may be found, as pleaded by the plaintiff, that the partnership entered into between plaintiff and W. S. McCornick terminated in 1912, there is no evidence that a cause of action existed at that time or at any time during the life of W. S. McCornick. The mere fact that a partnership is dissolved does not necessarily immediately give either of the parties a cause of action or suit against the other. The statutes of limitation do not begin to run until a suit or cause of action exists. *Wood* v. *Fox*, 8 Utah, 380, 32 P. 48; *Thomas* v. *Glendinning*, supra; *Hamilton* v. *Dooly*, 15 Utah, 280, 49 P. 769; *Stevens* v. *Rogers*, 16 Utah, 105, 51 P. 261; *Crescent Min. Co.* v. *Silver King Min. Co.*, 17 Utah, 444, 54 P. 244, 70 Am. St. Rep. 810; *Crofoot* v. *Thatcher*, 19 Utah, 212, 57 P. 171, 75 Am. St. Rep. 725; *Felkner* v. *Dooly*, 28 Utah, 236, 78 P. 365, 3 Ann. Cas. 199; *Sharp* v. *Sharp*, 54 Utah, 262, 180 P. 580; *Bankers' Trust Co.* v. *Riter et al.*, 60 Utah, 1, 206 P. 276.

If laches are relied upon as a defense without regard to the statutes of limitation, the circumstances surrounding the delay are of primary importance. *Sharp* v. *Sharp,* supra; *Bankers' Trust Co.* v. *Riter et al.,* supra. Counsel for defendants earnestly and ably contend that by reason of the fact that W. S. McCornick at the time of his death was advanced in years and his expectancy of life was short, and by reason of the further fact that nine years elapsed between the date of the alleged dissolution of the partnership and the death of W. S. McCornick, the plaintiff should not now be permitted to prosecute his alleged stale claim when those interested in the estate are without knowledge of the facts and are deprived of the evidence of W. S. McCornick, deceased. If the plaintiff had a right to demand an accounting from W. S. McCornick during his lifetime, of if the delay was the fault of the plaintiff, there is much merit to this contention. On the other hand, if the plaintiff had no legal right to demand an accounting during the lifetime of W. S. McCornick because of the agreement as alleged in plaintiff's complaint, or if the delay in securing an adjustment of the alleged partnership business at Twin Falls was for the sole accommodation of and upon the request by W. S. McCornick, plaintiff and his counsel may well, as stated in their brief, feel the seriousness of the handicap suffered by one against whom the bar of section 7123 (3) Comp. Laws Utah 1917, is successfully invoked. They may, in such case, be justified in agreeing with Wigmore on Evidence, pp. 1004-1008, and 5 Chamberlayne Mod. Law of Evidence, § 3670, as stated in their brief, "that such legislation should be relegated to the scrap heap as antiquated, unnecessary and unjust." In the instant case, however, the provisions of section 7123, Comp. Laws Utah 1917, greatly minimize any injustice that may be caused to defendants herein by reason of the delay in not bringing this suit until after the death of W. S. McCornick. If the plaintiff were permitted to testify as to transactions had with W. S. McCornick, there would be much more merit

to the contention that to permit plaintiff to prosecute his alleged claim would be a serious injustice to the defendants. By reason of the death of W. S. McCornick and by reason of the fact that the plaintiff was disqualified from testifying as to conversations and transactions had with the deceased, the evidence in this case is somewhat meager as to the reasons, if any, for the delay in bringing this suit. It does appear, however, that the plaintiff and W. S. Mc Cornick had been business associates for nearly half a century, and it may well be inferred that each reposed the utmost confidence in the other. Ernest R. Woolley testified that McCornick stated in June, 1920, that he did not want to sell the Twin Falls bank because if he sold this property he might lose the services of the plaintiff on the Sevier Land & Water Company, which he did not desire to do. It would appear from this evidence that W. S. Cornick was planning to avoid a settlement, but whether as a right or as a favor from the plaintiff is not made to appear. It further appears from the testimony of the witness J. E. Jennings that the plaintiff was seeking an adjustment of some claim he had against W. S. McCornick on account of the Twin Falls transactions. If, therefore, the plaintiff had no legal right to demand an accounting from W. S. McCornick during his lifetime, the law of laches does not apply, and if the failure of the plaintiff to bring suit for an accounting prior to the death of W. S. McCornick was solely for the accommodation of and upon request by W. S. McCornick, the plea of laches in a court of equity should not bar the suit in the absence of the bar of the statutes of limitation.

The defendants further contend that the motion for nonsuit was properly granted because the plaintiff failed to prove that a proper claim was presented to the executors of the will of W. McCornick, deceased. We are of opinion that this contention is without merit. Under the stipulation entered into between counsel as hereinbefore set out, and under the proceedings had at the time

the motion for nonsuit was interposed, no claim was made that the manner of presenting the claim was at all questioned. The motion for nonsuit was not based upon the failure of the plainitff to prove that he presented his claim, and the defendants in their answer admit that a verified claim was presented to them and that the same was rejected.

Appellant has 43 assignments of error based upon the rulings of the trial court upon the admission and rejection of evidence, but, as these rulings will in all probability not recur in a retrial of this case in the form presented on this appeal, it would be of but little, if any, value to review the assignments.

We are of the opinion that the learned trial judge was in error in granting the motion for nonsuit and in dismissing plaintiff's suit in equity, and that the plaintiff is entitled to have the same disposed of on its merits. It is therefore ordered that the judgment dismissing plaintiff's suit be and the same is hereby reversed and this cause is remanded back to the trial court, with directions to grant a new trial. Appellant to recover his costs.

THURMAN, C. J., and GIDEON, CHERRY, and STRAUP, JJ., concur.