In the Matter of the ESTATE OF
James Henry HARRIS, aka
James H. Harris, Deceased.

William B. Harris, Plaintiff
and Appellant.

No. 19457.

Supreme Court of Utah.

Nov. 14, 1986.

**1004**

E.J. Skeen, David A. Greenwood, Salt Lake City, for appellant.

Hollis S. Hunt, Salt Lake City, for respondent.

STEWART, Associate Chief Justice:

William B. Harris appeals the final accounting in the probate of the will of James Henry Harris. William and his father, James Henry Harris, were partners in business. William claims that certain partnership property was commingled with the assets of the deceased's estate and therefore objects to the final estate accounting by the co-personal representative. We affirm in part, reverse in part, and remand with directions.

The parties have had three trials and one previous appeal to this Court, *Harris v. Tanner*, 624 P.2d 1135 (Utah 1981). The appellant is now here for a second time seeking remand for a fourth trial.

In the first trial, the Honorable Bryant H. Croft determined that William and his father had been partners at least until 1971, that certain items of property belonged to their partnership rather than to William or his father as individuals, that neither had any claim against the other for any partnership business conducted between 1972 and 1974, and that William was entitled to an accounting from the estate of James, who died while the action was pending. Judge Croft also ruled that William had a right to recover his share of any partnership property which had been commingled with the property of the estate. That decision was not appealed.

James' affairs for the last several years of his life were handled by his daughter, Genave H. Tanner, one of the executrixes of his estate. Genave was hostile to her brother William and admitted that she had removed money from partnership accounts and deposited it in other accounts in either her or her father's name.

The parties had a second trial before the Honorable David K. Winder to determine the remaining partnership issues. On appeal from that decision to this Court, we summarized the proceedings of the second trial:

> On July 20, 1978, William B. Harris moved the court for an order requiring the personal representatives of the James H. Harris Estate to make an accounting of all property of the Harris partnership in their possession, all property sold or otherwise disposed of, the money on deposit in certain designated bank accounts and of any withdrawal therefrom.
>
> After two days of trial on the plaintiff's motions the court, [t]he Honorable David K. Winder presiding, found that various items of partnership property and the value thereof were in the possession of William B. Harris and that certain other items of partnership property were in the possession of the personal representatives of the estate of James H. Harris and that such property had a certain monetary value. The court ordered William to pay the amount which the property in his possession exceeded the value of that in possession of the personal representatives.
>
> The court found that the claims of William B. Harris against the Estate of James H. Harris had been fully adjudicated in [that second] proceeding and the prior proceeding before the Honorable Bryant H. Croft.
>
> The court concluded that the partnership affairs should be wound up and terminated, and its assets distributed as above indicated. The parties presented the evidence respecting their respective claims, or at least they were afforded an opportunity to do so.

*Harris v. Tanner*, 624 P.2d at 1137.

We affirmed Judge Winder's decision, but noted that his decision did not affect William's rights, if any, under Judge Croft's earlier decision. *Id.* We specifically referred to several of Judge Croft's rulings:

> that "one-half of the assets that came out of the Harris-Fidler partnership to the Harrises belonged to William and one-half belonged to the estate of James and that James, by terminating his partnership with William after 1971, could not thereby take from William and deny to him his one-half interest in the partnership property or the proceeds therefrom;
>
> ... that "only James' interest in the partnership assets would be subject to probate and liable for the debts and obligations of the estate being probated."
>
> . . . . .
>
> The question of William's right, if any, to share under the will of James, was reserved for future proceedings in or pertaining to the matter of the estate of James H. Harris, deceased.
>
> ... [and] that "[a]ll moneys contained in James' bank accounts as testified to by Genave, including those funds transferred by her before James' death are to be accounted for by the Co-Executrixes in the probate estate."

*Id.* We held

> that [William was] not proscribed from proceeding ... to recover his share of any partnership property which might have been commingled with the estate assets. Under the decisions in this case the personal representatives are obligated to render an accounting.

*Id.* at 1138.

On April 14, 1981, Genave Tanner died. Her sister, Grace H. McPhie, as one of the executrixes of the estate, took over the books of James' estate and petitioned for approval of a final settlement and distribution of James' estate. William objected.

A third trial was then held before the Honorable Scott Daniels. Judge Daniels determined that the only remaining complaint which William could raise about the dissolution of the Harris partnership was whether any items of partnership property had been commingled with the estate bank accounts. He heard all the evidence the estate offered concerning the sources of the funds in the various accounts and the discrepancies between the amount of funds held by the estate at the time of James' death and the amount available for disbursement at the time of the third trial.

### I.

Judge Daniels correctly concluded that the only partnership property still subject to an accounting was the money on deposit in the bank accounts mentioned in paragraph 6 of Judge Croft's original order. The Harris-Fidler partnership was a separate partnership that William and James had entered into with Wilton and Merrill Fidler. Judge Croft ruled that "only James' interest in the partnership assets would be subject to probate and liable for the debts and obligations of the estate," and that one-half the assets which came to the Harrises from the Harris-Fidler partnership belonged to William. That ruling was not affected by Judge Winder's order, which directed distribution of the Harris partnership property identified as the Harris-Fidler assets in the possession of William and the estate. He also ordered William to pay the estate the difference in value between the partnership property in his possession, including the Harris-Fidler property, and the part in possession of the estate. That decision was affirmed on appeal. *Id.* at 1137.

The question of William's right to share under the will of James was decided in the third trial and has not been appealed. All that is involved in this appeal is Judge Croft's final ruling that "[a]ll monies contained in James' bank accounts as testified to by Genave, including those funds transferred by her before James' death are to be accounted for by the Co-Executrixes in the probate estate." *Id.* That is the only partnership issue which remained to be decided after the first appeal. All other claims that William had against the estate of James, and particularly those which could be construed to exist under paragraphs 7 and 8 of Judge Croft's decision, were adjudicated by Judge Winder and affirmed on appeal by this Court.

### II.

Section 48–1–19, U.C.A., 1953, provides that "[a]ny partner shall have the right to a formal account as to partner affairs ... if he is wrongfully excluded from the partnership business or possession of its property by his copartners." In *Harris v. Tanner*, 624 P.2d at 1137, this Court held that William Harris was entitled to an accounting from the executrixes of the probate estate for "[a]ll monies contained in the James H. Harris bank accounts as testified to by Genave H. Tanner, including those funds transferred by her before the death of James H. Harris."

 During the last years of James' life, Genave managed his partnership affairs, was his agent, and owed William the same fiduciary duty that James did. "This is not the usual situation where the [executrix] may be a stranger to pending litigation. Here, the [executrix] has been in the middle of it, from inception of the lawsuit, in a most intimate way." *Tschirgi v. Meyer*, 536 P.2d 558, 565 (Wyo.1975). The accounts at issue were under her control until the time of her death; she had all the records. Genave held the partnership assets in trust for the surviving partner, William. *Sharp v. Sharp*, 54 Utah 262, 271, 180 P. 580, 584 (1919); *Fernandez v. Garza*, 88 Ariz. 214, 218, 354 P.2d 260, 263 (1960). Because Genave had control of her father's accounts and the records of those accounts, the estate had the burden of (1) proving which accounts were partnership accounts and which were not, (2) identifying the source of the funds contained in nonpartnership accounts if possible, and (3) proving that the funds, which had been in partnership accounts and had been re-

moved from those accounts by the executrixes had been adequately accounted for. *Fernandez v. Garza,* 88 Ariz. at 220, 354 P.2d at 264–65.

■ The law does not, however, require the estate to prove that all the cash in each of the various bank accounts belonged solely to James to avoid those accounts being deemed partnership property. *See generally Bankers' Trust Co. v. Riter,* 56 Utah 525, 531, 190 P. 1113, 1115 (1920). Although there is no presumption that the amounts in the various bank accounts belonged to the Harris partnership, once it was shown that Genave had control of particular bank accounts containing partnership funds and that not all partnership funds were accounted for, ambiguity or uncertainty as to ownership of those funds should be resolved in favor of deeming them partnership funds. *Fernandez v. Garza,* 88 Ariz. at 220, 354 P.2d at 264–65. Since Genave moved partnership funds around from one bank account to another, she was in the better position to know the sources of various funds.

At the time of the third trial before Judge Daniels, the following three bank accounts were subject to the accounting (using the account numbers that are used in the findings of fact):

| BANK & NUMBER | | AMOUNT (at James' death) |
|---|---|---|
| 1. Commercial Security Bank | 343012–3 | $11,691.62 |
| 2. Zion's First National Bank | 03–34003–1 | $23,457.35 |
| 3. Zion's First National Bank | 03–30572–9 | $ 30.58 |

For simplicity, these accounts will be referred to as accounts No. 1, No. 2, and No. 3.

Account No. 1 was held by James and Genave as joint tenants. Evelyn Martin testified that James wanted Genave to have the amounts on deposit at his death in consideration for the help that she had given him in his old age. William asserts that the estate provided no competent evidence as to the source of the funds in account No. 1.

■ In response to a question from William's attorney, Ms. Martin testified that $10,575 came into that account from a payment the partnership received when it sold a BLM grazing permit. At the first trial, Judge Croft found that the BLM grazing permit sold for $10,575 on December 9, 1974, was partnership property and awarded William judgment for one-half of that sum, $5,287.50. This judgment has been satisfied by the estate. *Harris v. Tanner,* 624 P.2d at 1136. Therefore, the $10,575 deposited in that account belonged solely to James, since William's judgment was presumably satisfied out of other estate funds. There was no evidence of the source of the remaining funds in account No. 1. Without some affirmative indication that these funds were partnership property, we presume they were James' separate property. Therefore, we affirm Judge Daniels' findings concerning account No. 1.

■ Account No. 2 was, in effect, a successor account to an earlier account which existed in James' name at Zion's First National Bank. Ms. Martin testified, and Judge Daniels found, that "[t]he majority of the money from this account came from the sale of the sheep herd which took place in late 1974. The income from this sale was included in James H. Harris' 1974 Tax Return." Judge Croft specifically ruled that funds included in the 1974 tax return were the separate property of James' estate. *Harris v. Tanner,* 624 P.2d at 1137. Therefore, the majority of the funds, which came from the sheep sale, were estate property. Accordingly, we affirm Judge Daniels' findings concerning account No. 2.

■ The estate conceded, and Judge Daniels found, that account No. 3, which was held in the names of James and William as joint tenants, was the sole property of William. William now contends that the estate has not accounted for the sum of approximately $12,000 which was withdrawn from the apparent predecessor to that account, Zion's First National Bank No. 03–30572–9, in November 1968 and deposited in an account at Tracy-Collins Bank in the name of Genave H. Tanner. Judge Daniels noted that this withdrawal occurred when the partnership was in full

operation,[1] that it was not possible to make an accounting of the money received by the partners during their 25 years of operating the partnership, and that in the absence of evidence to the contrary, Judge Daniels would presume that the partners were satisfied with the distribution of partnership proceeds during the course of the partnership. We do not believe, however, that that ruling can stand. Judge Croft's ruling that it was impossible to account for income over the 25 years of the partnership was a reference to the Harris-Fidler partnership only. Genave clearly had the duty to account for all funds withdrawn from Harris partnership accounts.

Judge Croft's order specifically stated that the estate was to provide William with an accounting of the amounts in James' account, "including those funds transferred by [Genave] before the death of James." *Harris v. Tanner*, 624 P.2d at 1137. The $12,000 was withdrawn from a Harris partnership account by Genave at her father's request. The withdrawal occurred during the period of difficulties between James, Genave, and William which gave rise to this litigation. Under Judge Croft's order, the estate had the burden to provide an accounting of the funds in account No. 3. The only evidence adduced in the trial before Judge Daniels with respect to Zion's account No. 3 was that $12,000 was withdrawn prior to James' death and transferred to James' daughter's account. The estate admitted that the account was a partnership account and that the $30.58 balance in it at the time of James' death was partnership money. Given the estate's burden of proof to show that the $12,000 was not partnership money and its failure to do so, and especially in light of the above evidence, we hold that William is entitled to one-half the $12,000 dollars withdrawn from the account.

Affirmed in part, reversed in part, and remanded for a modification of the judgment in accord with this opinion. No costs.

1. Apparently William was not actively prevented by his brother and sisters from carrying on

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., does not participate herein.

partnership business until 1970.